**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZENITH CAREX INTERNATIONAL, LIMITED, | : : : |
| *Plaintiff-Counter Defendant*, | : : |
| v. | : : Civil Action No. 1:25-cv-00578-LLA |
| CHEMONICS INTERNATIONAL, INC., d/b/a SAII Associates Ltd/Gte., | : : : : |
| *Defendant-Counterclaimant*. | : : |

**DEFENDANT CHEMONICS INTERNATIONAL, INC.'S**
**COUNTERCLAIMS AGAINST ZENITH CAREX INTERNATIONAL, LIMITED**

Defendant-Counterclaimant Chemonics International, Inc. ("Chemonics") is an international development firm that, for fifty years, has been providing humanitarian and sustainable-development assistance to deliver lifesaving aid to vulnerable populations and to strengthen local systems around the globe. These and other multidisciplinary initiatives further Chemonics' mission of promoting meaningful change around the world to help people live healthier, more productive, and more independent lives.

Chemonics brings these breach-of-contract Counterclaims to recover its damages, costs, and attorneys' fees incurred as a direct and proximate result of multiple breaches of contract by Plaintiff-Counter Defendant Zenith Carex International Ltd. ("Zenith"), a former subcontractor that defrauded Chemonics and brought its own Complaint in this action in knowing violation of the parties' March 2022 confidential Settlement Deed and Release, which—in direct violation of the agreement—is attached to the Complaint in this action at ECF No. 1-8 (the "Settlement Agreement"). All of Zenith's claims asserted in its Complaint are barred by the parties' Settlement Agreement, and Zenith committed multiple material breaches of the Settlement Agreement in

commencing its improper action. With these Counterclaims, Chemonics seeks to enforce the parties' Settlement Agreement and to recover damages, attorneys' fees, and costs that are provided for under the Settlement Agreement.

## I.    THE PARTIES

1.    Defendant-Counterclaimant Chemonics is a citizen of the District of Columbia. Chemonics is a private corporation organized and headquartered in Washington, D.C. with its principal place of business at 1275 New Jersey Avenue SE, Washington, DC 20003.

2.    Founded 50 years ago, Chemonics is known globally for creating development programs that benefit communities. Chemonics' mission is to promote meaningful change around the world to help people live healthier, more productive, and more independent lives.

3.    Chemonics is a leading professional services company with teams that reflect a diversity of technical expertise and local knowledge, because solving complex challenges requires both.

4.    With a network of local partners and experts, Chemonics adapts strategies to fit the unique needs of each project, ensuring they support local priorities.

5.    Chemonics has managed projects in 160 countries, handling complex initiatives for organizations, including the United States Agency for International Development ("USAID") and the Global Fund. Chemonics' work covers many areas, including agriculture, health, water, education, human development, security and stabilization, and business.

6.    Chemonics values integrity, inclusivity, collaboration, and social responsibility and believes that these tenets are key to solving global challenges. Chemonics empowers its team to create solutions that positively impact people globally.

7.      Plaintiff-Counter Defendant Zenith is a citizen of the Federal Republic of Nigeria ("Nigeria"). Zenith is registered under the laws of Nigeria and has its principal office at 10 Langtang Close, Foto House, Tafawa Balewa Close, Area 3 Garki, Abuja.

8.      Zenith is a logistics provider that offers haulage and related services across Nigeria. It is a former subcontractor of Chemonics that provided long-haul and last-mile delivery services for Chemonics' contracts with USAID and the Global Fund until allegations surfaced that Zenith was fraudulently overbilling Chemonics for those services.

9.      Investigations by the Global Fund's Office of the Inspector General and the United States Department of Justice ("USDOJ"), which concluded in 2021 and 2024, respectively, determined that Zenith had, indeed, fraudulently overbilled Chemonics for more than two years.

## II.    JURISDICTION AND VENUE

10.      The United States District Court for the District of Columbia has jurisdiction over these Counterclaims because Zenith filed its original Complaint in this Court. Further, this Court has jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

11.      Venue is proper in the United States District Court for the District of Columbia because Zenith filed its original Complaint in this Court. Furthermore, venue is proper because a substantial part of the events giving rise to the claims in this action occurred in the District of Columbia. 28 U.S.C. § 1391(b)(2).

## III.    FACTS

### A.    The Parties Entered an Indefinite Delivery/Indefinite Quantity Subcontract on May 23, 2017, Which Required Chemonics to Report Any Allegations of Fraud by Zenith to the United States Government.

12.      On May 23, 2017, Chemonics and Zenith "entered into an indefinite delivery/indefinite quantity (IDIQ) subcontract" (the "Subcontract") pursuant to which Zenith was

to provide Chemonics with "long haul and last mile delivery services" in connection with a primary contract among Chemonics, USAID, and the Global Fund. *See* Compl. (ECF No. 1) ¶ 14; *see also id.*, Ex. 1.

13.    "The [S]ubcontract required [Zenith] to provide logistics services for [Chemonics'] contracts with USAID and The Global Fund for their joint health programs in Nigeria." *See* Compl. ¶ 15; *see also id.*, Ex. 1.

14.    In executing the Subcontract, Zenith expressly agreed that it would "comply with the applicable USAID regulations governing this [S]ubcontract, which are incorporated by reference into this [S]ubcontract." Compl., Ex. 1, § M(a).

15.    In addition, the Subcontract explicitly incorporated certain "flow-down clauses as required by the Federal Acquisition Regulation and the USAID Acquisition Regulation," including Clause Number 52.203-13. Compl., Ex. 1, § CC.5, pp. 23–24.

16.    Pursuant to Clause Number 52.203-13(b)(3)(i), which is codified in the United States Code of Federal Regulations, Chemonics had an ongoing obligation under the Subcontract and the governing federal regulations to "timely disclose" to the United States government whenever it obtained "credible evidence that a . . . subcontractor [had] committed (A) A violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations . . . ; or (B) A violation of the civil False Claims Act." 48 C.F.R. § 52.203-13.

**B.    In Early 2020, Chemonics Became Aware of Allegations that Zenith Was Fraudulently Overbilling Chemonics, and Chemonics Promptly Complied with Its Disclosure Requirements.**

17.    In or about January and February 2020, Chemonics received credible information from a whistleblower and from the Global Fund that Zenith was engaged in fraudulent billing for its services to Chemonics under the Subcontract.

18.     The Global Fund Office of Inspector General informed Chemonics that it was investigating Zenith for this alleged fraudulent overbilling of Chemonics under the Subcontract.

19.     Upon receiving this credible information, and consistent with its obligation under the Subcontract and United States law, Chemonics promptly disclosed to USDOJ these allegations that Zenith had fraudulently overbilled Chemonics under the Subcontract.

20.     Chemonics cooperated with investigations conducted by USDOJ and by the Global Fund Office of Inspector General, including by providing extensive documentation and participating in a joint field mission to Chemonics' Abuja office in February 2020 with the Global Fund Office of Inspector General.

21.     In February 2020, Chemonics updated its disclosure to USDOJ to disclose specific allegations that Zenith had intentionally overbilled Chemonics for long-haul delivery and last-mile delivery services.

22.     The Global Fund Office of Inspector General conducted a thorough investigation and determined that Zenith had fraudulently overbilled Chemonics for long-haul and last-mile delivery services under its Subcontract with Chemonics by millions of U.S. dollars over multiple years.

### C.     The United States Department of Justice Determined that Zenith Fraudulently Overbilled Chemonics for Services Under the Subcontract.

23.     As Zenith acknowledges in its Complaint, USDOJ, through the U.S. Attorney's Office for the Western District of Missouri and the Fraud Section of the Civil Division, conducted an investigation of Chemonics for potential violations of the False Claims Act "for submitting [allegedly] fraudulent claims for payment to the USAID." Compl. ¶ 31.

24.     That government investigation ended in December 2024 with a settlement agreement between Chemonics and the United States. *See* Compl., Ex. 9.

25.     USDOJ described the findings of its investigation in that settlement agreement, which are consistent with the findings reached by the Global Fund Office of Inspector General. USDOJ determined from its investigation "that Zenith systematically and fraudulently overcharged Chemonics for [long-haul delivery] and [last-mile delivery] services in Nigeria for more than 2 years." Compl., Ex. 9, ¶ D(3).

26.     On December 19, 2024, USDOJ issued a press release concerning its findings in the investigation and the settlement agreement with Chemonics. Compl., Ex. 10.

27.     In the press release, USDOJ reported that the settlement agreement resolved the government's "allegations that Chemonics acted recklessly in failing to detect fraudulent charges by its subcontractor, Zenith Carex (Zenith), for certain delivery services in Nigeria, and passed the charges on to USAID under the Global Health Supply Chain-Procurement and Supply Chain Management contract." Compl., Ex. 10 at 1.

28.     The press release ended with a statement that: "The claims [against Chemonics] resolved by the settlement are allegations only. There has been no determination of liability." Compl., Ex. 10 at 2.

**D.      Zenith and Chemonics Separately Engaged in Dispute Resolution Proceedings that Terminated in a Settlement Agreement and Release Finalized in March 2022.**

29.     Zenith has alleged that Chemonics stopped paying Zenith's invoices for services under the Subcontract in or about March 2020. Compl. ¶ 24.

30.     On August 27, 2020, Zenith disregarded the parties' arbitration agreement in the Subcontract and "reported" Chemonics and the Global Fund to Nigeria's Federal Ministry of Health for allegedly failing to pay Zenith's invoices for services under the Subcontract, but Zenith claims that it received no response. Compl. ¶ 24.

31.     Zenith then "filed a petition with the Economic and Financial Crimes Commission ('EFCC') on February 9, 2021," asserting that Chemonics owed Zenith approximately 136 million Naira under the Subcontract—again, in disregard for the parties' arbitration agreement in the Subcontract. Compl. ¶ 24. Zenith updated its petition with the EFCC on February 1, 2022. *Id.*; *see also* Compl., Ex. 5.

32.     On April 8, 2021, in accordance with the arbitration provision in the Subcontract, Chemonics filed a demand for arbitration with the AAA, alleging that it "brought this arbitration to recover from a subcontractor (Zenith) that overcharged, by millions of dollars (USD), for the delivery of health commodities in Nigeria," which "violated the parties' distribution [S]ubcontract, was fraudulent, and damaged [Chemonics]." Compl., Ex. 6 at 1.

33.     Chemonics sought damages of at least $6 million in the arbitration for Zenith's fraudulent overbilling under the Subcontract. Compl., Ex. 6 at 1.

34.     Zenith responded on April 27, 2021, by filing an answering statement and a counterclaim. *See* Compl., Ex. 6.

35.     On March 22, 2022, Zenith and Chemonics (d/b/a SAII Associates Ltd/Gte) entered into the Settlement Agreement to resolve all disputes between the parties relating to the Subcontract and/or their relationship, including their dispute over Zenith's fraudulent overbilling under the Subcontract.

36.     Under the parties' March 2022 Settlement Agreement, the parties defined "Disputes" broadly to include their disputes submitted in (1) the Zenith petitions to the Federal Ministry of Health on August 27, 2020, and to the Economic and Financial Crimes Commission on February 9, 2021, and on February 1, 2022 and (2) the AAA arbitration proceeding, including

Chemonics' claim and Zenith's counterclaim, as well as (3) "any other controversies, arising under or relating to the Subcontract." Settlement Agreement at 2.

37.    In addition, the parties agreed to a broad, general release of claims, including future claims, that were in any way connected with their Disputes, the underlying facts, any agreement between or act by either of them, or their relationship:

> This Deed is in full and final settlement of, and each Party releases and forever discharges, all and any actions, claims, rights, demands and set-offs, whether in this jurisdiction or any other, ***whether or not presently known to the Parties or to the law***, and whether in law or equity, that it, its Related Parties or any of them ***ever had, may have or hereafter can, shall or may have*** against the other Party or any of its Related Parties ***arising out of or connected with***: (a) the Disputes; (b) ***the underlying facts*** relating to the Disputes; (c) any agreement between ***or act by*** the Parties or their Related Parties or any of them; and (d) ***any other matter arising out of or connected with the relationship between the Parties***. (Collectively the "Released Claims").

Settlement Agreement ¶ 6 (emphases added).

38.    Furthermore, the Parties agreed that:

> a.    "Each Party without admission of liability for any alleged breach whatsoever, or any wrongful, unlawful, unjust or any like conduct, undertakes to release the other Party and its Related Parties of all obligations and liabilities arising from any of the Disputes and the Subcontract." (Settlement Agreement ¶ 3).
>
> b.    "Zenith shall within seven days from this Deed irrevocably withdraw the Zenith Petitions from the Economic and Financial Crimes Commission and the Federal Ministry of Health and forever discharge SAII and the Related Parties of any wrongdoing." (Settlement Agreement ¶ 4.2a).
>
> c.    "SAII shall within seven days from this Deed irrevocably withdraw the SAII Petition from the Economic and Financial Crimes Commission and forever discharge Zenith of any wrongdoing." (Settlement Agreement ¶ 4.2b).
>
> d.    "Each Party agrees on behalf of itself and on behalf of its Related Parties not to sue, commence, voluntarily aid in any way, prosecute, or cause to be commenced or prosecuted against the other Party or its Related Parties any action, suit or other proceedings concerning the Released Claims, in this jurisdiction or any other." (Settlement Agreement ¶ 7.1).

e. "This Deed is entered into in connection with the compromise of disputed matters and in the light of other considerations. It is not and shall not be represented or construed by the Party as, an admission of liability or wrongdoing on the part of either, Party to this Deed or any other person or entity." (Settlement Agreement ¶ 11).

f. "The terms of this Deed and the substance of all negotiations in connection with it, are confidential to the Parties and their advisers, who shall not disclose them to, or otherwise communicate them to, any third party other than: (a) to the Parties' respective auditors, insurers and lawyers on terms which preserve confidentiality. (b) pursuant to an order of a court of competent jurisdiction or pursuant to any proper order or demand made by any competent authority or body where they are under a legal or regulatory obligation to make such a disclosure. (c) as far as necessary to implement and enforce any of the terms of this Deed." (Settlement Agreement ¶¶ 14a-14c).

39.     The Settlement Agreement is a valid and enforceable contract, supported by adequate consideration, mutual assent, and lawful purpose.

40.     Pursuant to the Settlement Agreement, Chemonics agreed, "[w]ithout any admission of liability, . . . to pay the gross sum of N120 million (one hundred and twenty million Naira) [currently about U.S. $75,000] . . . *as full and final resolution of all Disputes and claims*." Settlement Agreement ¶ 4.1 (emphasis added).

41.     Although Chemonics denies any and all wrongdoing, it elected to buy peace through the Settlement Agreement, in part, because Zenith was interfering with Chemonics' personnel abroad, including conduct that separated Chemonics' personnel from their passports, rendering them unable to travel, including to return home to the United States.

42.     On April 5, 2022, the arbitration was dismissed pursuant to "the parties' Joint Motion to Close This Arbitration and Dismiss All Legal Claims." Compl., Ex. 7 (Order of Dismissal), ¶ 1.

43.     The parties jointly sought to dismiss the arbitration based on the Settlement Agreement, reporting to the arbiters that the parties had "entered into a Confidential Settlement

Deed and Release to fully resolve all disputes between the parties relating to the subject matter of this arbitration, including but not limited to resolving all disputes arising out of or relating to the Indefinite Delivery/Indefinite Quantity Subcontract Agreement No. 0001B-17-TLP-NGA, and all amendments thereto and relationships between the parties." Compl., Ex. 7 (Joint Motion to Close this Arbitration and Dismiss all Legal Claims), ¶ 2.

44.     Despite executing the Settlement Agreement and paying an agreed-upon sum of money to put an end to all claims related to the Subcontract, the parties' Disputes as broadly defined within the Settlement Agreement, and their relationship, Chemonics now faces improper litigation brought by Zenith in direct breach of the Settlement Agreement.

45.     Chemonics has performed all of its obligations under the Settlement Agreement and is not in breach of any of its terms.

**E.      On January 7, 2025, Zenith Sent Chemonics a Threatening Letter in Breach of the Settlement Agreement.**

46.     As set forth in Zenith's Complaint, on January 7, 2025, Zenith sent a threating letter to Chemonics, making false accusations and demanding that Chemonics publish a statement in a daily newspaper accusing the USDOJ Office of Public Affairs of making "malicious defamatory" statements in its December 2024 press release concerning the government's finding that Zenith fraudulently overbilled Chemonics. *See* Compl., Ex. 11 at 3–4.

47.     The letter further threatened that Zenith would organize a press release and pursue additional legal action against Chemonics if Chemonics did not comply with Zenith's demand to publish an accusatory statement against the USDOJ within fourteen days. *See* Compl., Ex. 11 at 4.

48.     Zenith threatened to organize a press release despite knowing that Paragraph 14 of the Settlement Agreement requires strict confidentiality concerning the parties' Settlement Agreement, including the negotiations leading up to it. *See* Settlement Agreement ¶ 14.

49.     Zenith threatened to sue Chemonics for claims related to the Subcontract and the parties' Disputes despite knowing that Paragraph 3 of the Settlement Agreement required the parties to release each other from "all obligations and liabilities arising from any of the Disputes and the Subcontract." Settlement Agreement ¶ 3.

50.     Zenith threatened to sue Chemonics for claims related to the Subcontract and the parties' Disputes despite knowing that the Settlement Agreement was a "full and final resolution" of all such claims and that Zenith had expressly agreed to "forever discharge [Chemonics] of any wrongdoing." Settlement Agreement ¶¶ 4.1–4.2.

51.     Zenith threatened to sue Chemonics for claims related to the Subcontract and the parties' Disputes despite knowing that Paragraph 6 of the Settlement Agreement is a broad release of "all and any actions, claims, rights, demands and set-offs, whether in this jurisdiction or any other, whether or not presently known to the Parties or to the law, and whether in law or equity, that [either party], may have or hereafter can, shall or may have against the other" related to the Subcontract, the parties' Disputes, or their relationship. Settlement Agreement ¶ 6.

52.     Zenith threatened to sue Chemonics for claims related to the Subcontract and the parties' Disputes despite knowing that Zenith had expressly agreed "not to sue, commence, voluntarily aid in any way, prosecute, or cause to be commenced or prosecuted against [Chemonics] any action, suit, or other proceedings" concerning such claims. Settlement Agreement ¶ 7.1.

53.     Zenith improperly and falsely claimed that "[t]he Settlement and payment of all [of Zenith's] invoices by Chemonics after the outcome of the EFCC Investigation was an admission that there was no over charged invoices or fraud and withdrawal from AAA (American Arbitration Association) and case dismissed is another proof that there was not any fraudulent act whatsoever

11

perpetrated by zenith [sic] Carex International Limited on the project," Compl., Ex. 11, at 2–3, despite knowing that Paragraph 11 of the Settlement Agreement mandates that the agreement "shall not be represented or construed by the Party as[] an admission of liability or wrongdoing on the part of either Party," Settlement Agreement ¶ 11.

54.     Chemonics responded on January 14, 2025, rejecting Zenith's allegations and demands and reminding Zenith that Chemonics had no control over the investigation or findings of the USDOJ, nor its press release. In addition, Chemonics expressly reminded Zenith that its threats were unfounded and improper because all claims relating to the subject matter of Zenith's January 7, 2025 letter were released by the parties' Settlement Agreement. *See* Jan. 14, 2025 Letter from M. Ogungbenro, attached hereto as **Exhibit A**.

> **F.     On February 27, 2025, Zenith Commenced this Lawsuit for Released Claims in a Knowing and Blatant Breach of Multiple Material Provisions of the Settlement Agreement.**

55.     Despite having been reminded just weeks before that "by the Settlement Agreement Zenith Carex released Chemonics from all allegations relating to the subject-matter of that agreement," (Ex. A), Zenith filed a twelve-count Complaint against Chemonics on February 27, 2025, relating to the subject-matter of the parties' March 2022 Settlement Agreement, in blatant disregard for its obligations under the Settlement Agreement.

56.     In its Complaint, Zenith purports to assert claims for defamation, defamation *per se*, injurious falsehood, tortious interference, breach of contract, and injunctive relief, all of which are based on Zenith's allegations that Chemonics purportedly disclosed to USDOJ allegations that Zenith engaged in fraudulent overbilling under the Subcontract. *See* Compl. ¶¶ 14–15 (describing services provided under Subcontract); *id.* ¶¶ 31–37 (describing allegations that Chemonics disclosed Zenith's overbilling under Subcontract to USDOJ); *see also id.* ¶¶ 58, 71, 85, 97, 110,

122, 135, 147, 160, 167, 179, and 189 (repeating, realleging, and basing all twelve counts on same allegations relating to the Subcontract).

57.    Chemonics' alleged disclosure to USDOJ is an alleged "act" by Chemonics, a party to the Settlement Agreement, and is thus covered by the terms of the release, such that all of Zenith's claims constitute Released Claims under the Settlement Agreement. Settlement Agreement ¶ 6.

58.    The allegations concerning Zenith's fraudulent overbilling that Chemonics purportedly disclosed to USDOJ are the same allegations it made against Zenith in its demand for arbitration, wherein Chemonics alleged that Zenith "overcharged, by millions of dollars (USD), for the delivery of health commodities in Nigeria," which "overcharging violated the parties' distribution [S]ubcontract, was fraudulent, and damaged Chemonics." Compl., Ex. 6. Accordingly, all of Zenith's claims arise out of or are connected with a "Dispute" within the meaning of the Settlement Agreement because they "relat[e] to the Subcontract" and "the underlying facts relating to the Disputes," including the arbitration. Settlement Agreement ¶¶ B, 6.

59.    Zenith's claims also arise out of and are connected with "any other matter arising out of or connected with the relationship between" Zenith and Chemonics because the alleged overbilling and Chemonics' required disclosure to USDOJ (which is the alleged basis for each of Zenith's claims) both arose out of the contractual relationship between the two entities, as the services for which Zenith fraudulently overbilled were provided under the Subcontract, and an express term of the Subcontract required Chemonics to disclose any allegations concerning Zenith's fraudulent overbilling to the United States government. Settlement Agreement ¶ 6.

60.    In filing its Complaint, Zenith breached its contractual obligations with Chemonics under, at a minimum, Paragraphs 3, 4.2, 6, 7.1, and 14 of the Settlement Agreement.

61. Specifically, by initiating this lawsuit and making the baseless allegations in its Complaint, Zenith:

    a. breached its agreement to release and forever discharge Chemonics from all claims and liabilities arising out of or connected with the Disputes and the Subcontract, as required by Paragraphs 3, 6, and 4.2;

    b. breached its covenant not to sue or commence any action or proceeding concerning the Released Claims, as set forth in Paragraph 7.1;

    c. breached its agreement to maintain strict confidentiality of the terms and substance of the Settlement Agreement, as mandated by Paragraph 14.

62. By pursuing claims that were expressly settled and released, Zenith has violated the parties' agreement, thereby causing Chemonics to incur additional legal expenses, reputational harm, and other damages that the Settlement Agreement was intended to prevent.

63. Chemonics therefore files these Counterclaims against Zenith seeking appropriate remedial action and damages, including for the undue distress and financial repercussions incurred due to Zenith's actions, and prays for relief from this Court for the reasons outlined herein, including as set forth in each Count below.

## IV.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT – PARAGRAPH 3
### OF THE SETTLEMENT AGREEMENT)

64. Chemonics repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

65. Paragraph 3 of the Settlement Agreement states: "Each Party without admission of liability for any alleged breach whatsoever, or any wrongful, unlawful, unjust or any like conduct,

undertakes to release the other Party and its Related Parties of all obligations and liabilities arising from any of the Disputes and the Subcontract." Settlement Agreement ¶ 3.

66.     Zenith's filing of the Complaint in this Court constitutes a material breach of Paragraph 3 of the Settlement Agreement.

67.     Zenith has breached Paragraph 3 because Zenith expressly agreed to "release [Chemonics] of all obligations and liabilities arising from any of the Disputes and the Subcontract," yet now seeks to relitigate and recover damages for the very same disputes and alleged conduct that were settled and released.

68.     Zenith's Complaint repeatedly references the same Subcontract, disputes, and alleged conduct that were at issue in the prior proceedings in Nigeria and before the AAA in the United States, all of which were resolved through the Settlement Agreement, which is itself repeatedly referenced in and attached to Zenith's Complaint.

69.     For example, in paragraph 24 of the Complaint, Zenith discusses the parties' disputes before the EFCC in Nigeria, including improperly and falsely suggesting that Chemonics "capitulated" in that dispute because it was "unable to prove its specious counterclaims." Compl. ¶ 24.

70.     In addition, Zenith discusses the parties' arbitration before AAA, including, but not limited to, in paragraphs 25 through 27 where Zenith baselessly calls it a "sham arbitration" with "manufactured, false, and fraudulent claims." Compl. ¶¶ 25–27. Zenith also attaches Chemonics' confidential arbitration demand to the Complaint as Exhibit 6, along with the parties' confidential joint motion to dismiss the arbitration and resulting order as Exhibit 7.

71.     Zenith also discusses the Settlement Agreement, including, but not limited to, in paragraphs 25 through 27 of the Complaint where Zenith acknowledges that the Settlement

Agreement "included mutual releases from liability and an agreement not to sue" and "resolved the dispute between the parties with finality and no liability." Compl. ¶¶ 28–29. In addition, Zenith attaches the confidential Settlement Agreement to the Complaint, which it filed unredacted and unsealed in the public domain. Compl., Ex. 8.

72.    And Zenith discusses the Subcontract repeatedly throughout the Complaint, including, but not limited to, in paragraphs 14 through 23. Zenith also attaches the Subcontract and a modification thereto as Exhibits 1 and 2 of the Complaint and asserts a breach of contract claim in Court XI of the Complaint based on Chemonics' purported breach of the implied covenant of good faith and fair dealing under that Subcontract. Compl. ¶¶ 14–23, 179–88, & Exs. 1–2.

73.    In other words, through the Complaint, Zenith seeks to impose "obligations and liabilities arising from . . . the Disputes and the Subcontract," which directly contravenes Paragraph 3 of the Settlement Agreement. Settlement Agreement ¶ 3.

74.    As a direct and proximate result of Zenith's breach of Paragraph 3 of the Settlement Agreement, Chemonics has incurred and will continue to incur substantial damages, including—but not limited to—loss of business opportunities, significant harm to its reputation and goodwill, and attorneys' fees and costs associated with enforcing the Settlement Agreement and defending against Zenith's improper and baseless Complaint.

75.    Zenith's conduct described above was deliberate and willful. Indeed, the knowing impropriety of Zenith's conduct is evinced, in part, by the timing of its Complaint, which was filed just weeks after Chemonics reminded Zenith of its obligations under the Settlement Agreement. Such bad-faith and willful misconduct warrants not only compensatory relief but also an award of punitive damages to deter Zenith from further violations of its contractual commitments.

76.     Chemonics is also entitled to specific performance of the Settlement Agreement, requiring Zenith to dismiss its Complaint with prejudice and to refrain from pursuing any further action, suit, or other proceeding concerning the Released Claims, in this jurisdiction or any other.

77.     WHEREFORE, Chemonics respectfully requests that this Court enter judgment in its favor and against Zenith on its First Claim for Relief and grant the requested relief and any other and further relief as the Court determines to be right and just.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT – PARAGRAPH 4.2 OF**
**THE SETTLEMENT AGREEMENT)**

78.     Chemonics repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

79.     Paragraph 4.2a of the Settlement Agreement states: "Zenith shall within seven days from this Deed irrevocably withdraw the Zenith Petitions from the Economic and Financial Crimes Commission and the Federal Ministry of Health and ***forever discharge SAII and the Related Parties of any wrongdoing***." Settlement Agreement ¶ 4.2a (emphasis added).

80.     Zenith breached the Settlement Agreement by failing to perform its obligations under Paragraph 4.2a because Zenith failed to forever discharge Chemonics of any wrongdoing by filing a Complaint against Chemonics in this Court on February 27, 2025, alleging various causes of action that are Released Claims under the Settlement Agreement.

81.     As a direct and proximate result of Zenith's breach of Paragraph 4.2a of the Settlement Agreement, Chemonics has incurred and will continue to incur substantial damages, including—but not limited to—loss of business opportunities, significant harm to its reputation and goodwill, and attorneys' fees and costs associated with enforcing the Settlement Agreement and defending against Zenith's improper and baseless Complaint.

82.    Zenith's conduct described above was deliberate and willful. Indeed, the knowing impropriety of Zenith's conduct is evinced, in part, by the timing of its Complaint, which was filed just weeks after Chemonics reminded Zenith of its obligations under the Settlement Agreement. Such bad-faith and willful misconduct warrants not only compensatory relief but also an award of punitive damages to deter Zenith from further violations of its contractual commitments.

83.    Chemonics is also entitled to specific performance of the Settlement Agreement, requiring Zenith to dismiss its Complaint with prejudice and to refrain from pursuing any further action, suit, or other proceeding concerning the Released Claims, in this jurisdiction or any other.

84.    WHEREFORE, Chemonics respectfully requests that this Court enter judgment in its favor and against Zenith on its Second Claim for Relief and grant the requested relief and any other and further relief as the Court determines to be right and just.

### THIRD CLAIM FOR RELIEF
### (BREACH OF CONTRACT – PARAGRAPH 6 OF THE
### SETTLEMENT AGREEMENT)

85.    Chemonics repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

86.    Paragraph 6 of the Settlement Agreement states:

> This Deed is in ***full and final settlement*** of, and each Party ***releases and forever discharges***, ***all and any actions, claims, rights, demands and set-offs***, whether in this jurisdiction or any other, ***whether or not presently known*** to the Parties or to the law, and whether in law or equity, that it, its Related Parties or any of them ***ever had, may have or hereafter can, shall or may have*** against the other Party or any of its Related Parties arising out of or connected with: (a) the Disputes; (b) the underlying facts relating to the Disputes; (c) any agreement between or act by the Parties or their Related Parties or any of them; and (d) any other matter arising out of or connected with the relationship between the Parties. (Collectively the "Released Claims"). (Settlement Agreement ¶ 6) (emphases added).

87.    Zenith breached this material provision of the Settlement Agreement by failing to release and forever discharge Chemonics of all and any actions, claims, rights, demands and set-

offs arising out of or connected with the parties prior disputes, Subcontract, and relationship, as evidenced by the fact that Zenith filed a Complaint against Chemonics in this Court on February 27, 2025, alleging various causes of action that are Released Claims under the Settlement Agreement.

88.    As a direct and proximate result of Zenith's breach of Paragraph 6 of the Settlement Agreement, Chemonics has incurred and will continue to incur substantial damages, including—but not limited to—loss of business opportunities, significant harm to its reputation and goodwill, and attorneys' fees and costs associated with enforcing the Settlement Agreement and defending against Zenith's improper and baseless Complaint.

89.    Zenith's conduct described above was deliberate and willful. Indeed, the knowing impropriety of Zenith's conduct is evinced, in part, by the timing of its Complaint, which was filed just weeks after Chemonics reminded Zenith of its obligations under the Settlement Agreement. Such bad-faith and willful misconduct warrants not only compensatory relief but also an award of punitive damages to deter Zenith from further violations of its contractual commitments.

90.    Chemonics is also entitled to specific performance of the Settlement Agreement, requiring Zenith to dismiss its Complaint with prejudice and to refrain from pursuing any further action, suit, or other proceeding concerning the Released Claims, in this jurisdiction or any other.

91.    WHEREFORE, Chemonics respectfully requests that this Court enter judgment in its favor and against Zenith on its Third Claim for Relief and grant the requested relief and any other and further relief as the Court determines to be right and just.

**FOURTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT – PARAGRAPH 7.1 OF**
**THE SETTLEMENT AGREEMENT)**

92.    Chemonics repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

93.     The Parties expressly agreed not to sue, commence, voluntarily aid in any way, prosecute, or cause to be commenced or prosecuted against the other party or its related parties any action, suit or other proceedings concerning the Released Claims, in this jurisdiction or any other. *See* Settlement Agreement ¶ 7.1.

94.     This provision was a material term of the Settlement Agreement intended to provide finality and certainty to the parties and to avoid further litigation and expense.

95.     Zenith breached Paragraph 7.1 of the Settlement Agreement by filing a Complaint against Chemonics on February 27, 2025, in this Court, alleging various causes of action that are Released Claims, such as defamation, injurious falsehood, tortious interference, and breach of contract.

96.     Zenith's Complaint is an action, suit or other proceeding concerning the Released Claims in violation of Paragraph 7.1 of the Settlement Agreement.

97.     As a direct and proximate result of Zenith's breach of Paragraph 7.1 of the Settlement Agreement, Chemonics has incurred and will continue to incur substantial damages, including—but not limited to—loss of business opportunities, significant harm to its reputation and goodwill, and attorneys' fees and costs associated with enforcing the Settlement Agreement and defending against Zenith's improper and baseless Complaint.

98.     Zenith's conduct described above was deliberate and willful. Indeed, the knowing impropriety of Zenith's conduct is evinced, in part, by the timing of its Complaint, which was filed just weeks after Chemonics reminded Zenith of its obligations under the Settlement Agreement. Such bad-faith and willful misconduct warrants not only compensatory relief but also an award of punitive damages to deter Zenith from further violations of its contractual commitments.

99.    Chemonics is also entitled to specific performance of the Settlement Agreement, requiring Zenith to dismiss its Complaint with prejudice and to refrain from pursuing any further action, suit, or other proceeding concerning the Released Claims, in this jurisdiction or any other.

100.    WHEREFORE, Chemonics respectfully requests that this Court enter judgment in its favor and against Zenith on its Fourth Claim for Relief and grant the requested relief and any other and further relief as the Court determines to be right and just.

### FIFTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT – PARAGRAPH 14 OF
### THE SETTLEMENT AGREEMENT)

101.    Chemonics repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

102.    Paragraph 14 of the Settlement Agreement provides that: "Each Party agrees that it will not make any public statement or announcement concerning the existence or terms of this Deed or the dispute between the Parties, except as required by law or with the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed." Settlement Agreement ¶ 14.

103.    Paragraph 14 of the Settlement Agreement imposes a contractual duty of confidentiality on both parties, limiting their ability to disclose or communicate any information about the Settlement Agreement or the underlying dispute to any third party.

104.    Zenith breached its duty of confidentiality under Paragraph 14 of the Settlement Agreement by making public statements and announcements concerning the existence and terms of the Settlement Agreement and the dispute between the parties, without the prior written consent of Chemonics and without any legal or regulatory obligation to do so.

105.    In the Complaint, Zenith disclosed and communicated to the Court and the public the existence and terms of the Settlement Agreement, including the amount of the payment

Chemonics agreed to make to settle the claims, the mutual releases of liability, and the agreement not to sue regarding the Released Claims. Compl., ¶¶ 28–29.

106.    Zenith also disclosed to the Court and the public the substance of the negotiations that led to the Settlement Agreement, including the allegations of fraud and inflated invoicing that Chemonics had made against Zenith in an arbitration proceeding, and the subsequent settlement proposal and acceptance by the parties. Compl., ¶¶ 25–27.

107.    Indeed, Zenith ***attached to the Complaint and filed on the public docket*** the (1) Chemonics' confidential AAA arbitration demand and Zenith's answer, (Compl., Ex. 6); (2) the parties' confidential Joint Motion to Close this Arbitration and Dismiss all Legal Claims and the accompanying order, (Compl., Ex. 7); (3) ***the parties' confidential Settlement Agreement, which states the confidential requirements on its face***, (Compl., Ex. 8); and (4) Zenith's January 7, 2025 threat letter, which also discloses the substance of the parties' negotiations leading up to the Settlement Agreement.

108.    Zenith's disclosure of the existence and terms of the Settlement Agreement and the substance of the negotiations in connection with it violated Paragraph 14 of the Settlement Agreement and constitutes a material breach of the Settlement Agreement.

109.    As a direct and proximate result of Zenith's breach of Paragraph 14 of the Settlement Agreement, Chemonics has incurred and will continue to incur substantial damages, including—but not limited to—loss of business opportunities, significant harm to its reputation and goodwill, and attorneys' fees and costs associated with enforcing the Settlement Agreement and defending against Zenith's improper and baseless Complaint.

110.    Chemonics is also entitled to specific performance of the Settlement Agreement, requiring Zenith to dismiss its Complaint with prejudice and to refrain from pursuing any further action, suit or other proceeding concerning the Released Claims, in this jurisdiction or any other.

111.    WHEREFORE, Chemonics respectfully requests that this Court enter judgment in its favor and against Zenith on its Fifth Claim for Relief and grant the requested relief and any other and further relief as the Court determines to be right and just.

**SIXTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT – LETTER)**

112.    Chemonics repeats and realleges Paragraphs 1 through 63 above as if fully set forth herein.

113.    As stated above, on January 7, 2025, Zenith sent an improper and threatening letter to Chemonics that referred to the long-resolved disputes between Zenith and Chemonics—settled by the parties in the Settlement Agreement. *See* Compl., Ex. 11.

114.    In its letter, Zenith demanded that Chemonics write a public apology to Zenith, to be published in a daily newspaper, in which Chemonics would (1) accuse the "Office of Public Affairs U.S. [D]epartment of Justice" of issuing a "malicious defamatory" press release and (2) claim that the press released "happened because of Chemonics failure to updated the US government the aftermath of the case after filling [sic] the initial fraudulent claim." Compl., Ex. 11 at 3–4.

115.    Zenith demanded receipt of the "apology letter within (14) days" on threat that Zenith would otherwise (1) "organize a press release/conference telling the world [its] side of the story" and (2) pursue additional legal action against Chemonics notwithstanding its prior release under the Settlement Agreement. Compl., Ex. 11 at 3–4.

116. The January 7th letter is itself a breach of Zenith's obligations under the Settlement Agreement.

117. Paragraph 11 of the Settlement Agreement mandates that the Settlement Agreement "is not and **shall not be represented or construed** by the Party as, an admission of liability or wrongdoing on the part of either Party to [the Settlement Agreement]." Settlement Agreement ¶ 11 (emphasis added). In direct contravention of that material provision, Zenith represented and construed the Settlement Agreement as an admission of liability and wrongdoing by Chemonics when it wrote (falsely) that "[t]he Settlement and payment of all our invoices by Chemonics after the outcome of EFCC Investigation **was an admission that there was no over charged invoices or fraud** and withdrawal from AAA (American Arbitration Association) and case dismissed **is another proof that there was not any fraudulent act** whatsoever perpetrated by [Zenith]." Compl., Ex. 11 at 3–4 (emphases added).

118. These false and unsupportable statements by Zenith in its letter also contravene Paragraph 3 of the Settlement Agreement, wherein the parties expressly acknowledged that the Settlement Agreement was entered "without admission of liability" by either Chemonics or Zenith. Settlement Agreement ¶ 3.

119. In addition, by threatening to organize a press release and to pursue further litigation, the January 7th letter constitutes an anticipatory breach of Paragraph 14, which requires strict confidentiality regarding the Settlement Agreement, and Paragraph 7.1, which mandates that each party to the Settlement Agreement would "not . . . sue, commence, voluntarily aid in any way, prosecute, or cause to be commenced or prosecuted against the other Party" any proceedings concerning the Released Claims. Settlement Agreement ¶ 7.1. These threats underscore Zenith's bad faith in asserting claims in its Complaint that it knew it could not bring.

120.    Zenith's wrongful characterization of the Settlement Agreement as an admission of wrongdoing has caused, and continues to cause, substantial reputational injury to Chemonics. As a direct and proximate result of Zenith's breaches of the Settlement Agreement, Chemonics has incurred and will continue to incur substantial damages, including—but not limited to—loss of business opportunities, significant harm to its reputation and goodwill, and attorneys' fees and costs associated with enforcing the Settlement Agreement and defending against Zenith's improper and baseless Complaint.

121.    Zenith's conduct described above was deliberate, willful, and undertaken with the intent to force Chemonics' to provide an unwarranted public apology. The knowing impropriety of Zenith's conduct is evinced, in part, by the timing of its Complaint, which was filed just weeks after Chemonics reminded Zenith of its obligations under the Settlement Agreement. Such bad-faith and willful misconduct warrants not only compensatory relief but also an award of punitive damages to deter Zenith from further violations of its contractual commitments.

122.    Chemonics is also entitled to specific performance of the Settlement Agreement, requiring Zenith to dismiss its Complaint with prejudice and to refrain from pursuing any further action, suit, or other proceeding concerning the Released Claims, in this jurisdiction or any other.

123.    WHEREFORE, Chemonics respectfully requests that this Court enter judgment in its favor and against Zenith on its Sixth Claim for Relief and grant the requested relief and any other and further relief as the Court determines to be right and just.

## V.    PRAYER FOR RELIEF AND DEMAND FOR JURY

For all of the foregoing reasons, Chemonics demands a trial by jury on its foregoing claims and prays for:

A.  Compensatory damages in an amount to be determined at trial;

B.  Consequential damages in an amount to be determined at trial;

C.  Incidental damages in an amount to be determined at trial;

D.  Punitive damages in an amount to be determined at trial;

E.  Attorneys' fees and costs; and

F.  Such other and further relief as the Court deems just and proper.


Dated: June 26, 2025                    DLA PIPER LLP

                                        By: */s/ Mary E. Gately*
                                        Mary E. Gately (D.C. Bar No. 419151)
                                        Paul D. Schmitt (D.C. Bar No. 1007680)
                                        500 Eighth Street NW
                                        Washington, DC 20004
                                        Tel: (202) 799-4524
                                        Fax: (202) 799-5524
                                        paul.schmitt@us.dlapiper.com
                                        mary.gately@us.dlapiper.com

                                        Marie Bussey-Garza (admitted *pro hac vice*)
                                        1650 Market Street
                                        One Liberty Place, Suite 5000
                                        Philadelphia, PA 19103
                                        Tel: (215) 656-3300
                                        Fax: (215) 656-3301
                                        marie.bussey-garza@us.dlapiper.com

                                        *Attorneys for Defendant Chemonics*
                                        *International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2025, I caused the foregoing document, Defendant Chemonics International, Inc.'s Counterclaims Against Zenith Carex International, Limited, to be electronically filed using the Court's CM/ECF system, which will send notification of such filing to all current counsel of record.

 */s/ Mary E. Gately*
Mary E. Gately